*475 OPINION.
Goodrich :
Petitioners contend that the basis for determining the profit on the sale of the stock is the fair market value at the date of its distribution to them in 1928. Respondent has determined and maintains that the basis is the fair market value of the stock on March 1, 1913. In the case of the decedent’s widow, now Lillian McDonald Brinton, he argues that she acquired the stock in question as her share of the community property, and that her election to take under the will was a nullity. We cannot agree with this argument.
Clearly by his will the decedent disposed of his separate estate, consisting of an undivided interest in his father’s estate, and all the community property. By her election to take under the will dece *476 dent’s widow relinquished her statutory interest in the community property in exchange for the rights accruing to her under the terms of the will. Thereafter her rights in all the property disposed of by the will, including all the property of the marital community, were limited and determined by the will, Smith v. Butler, 19 S.W. 1083; Prior v. Pendleton, 47 S.W. 706; 49 S.W. 212. She became a beneficiary of the will and could not thereafter claim any interest in the community property as the survivor of the community. Cf. Farmer v. Zinn, 261 S.W. 1073; Heller v. Heller, 233 S.W. 870; Scaggs v. Deskin, 66 SW. 793; Smith v. Butler, supra. Thereafter her survivor’s share of the community property undoubtedly became liable for the debts of the estate, including the personal debts of the decedent. Cf. Shiner v. Shiner, 40 S.W. 439. While it may be suggested that her rights under the will were acquired by purchase, cf. Allen v. Brandeis, 29 Fed. (2d) 363; Irwin v. Gavit, 268 U.S. 161; Mary W. B.,Curtis, 26 B.T.A. 1103, nevertheless this did not change her character as a beneficiary of the will. She was subject to the same administration as other beneficiaries in accordance with the terms of the will. Cf. Butterworth v. Commissioner, 63 Fed. (2d) 944.
The interest which she acquired was not that of a beneficiary of a trust or a life tenant, but a vas a one-half interest in all the net estate disposed of by the will, which, after the payment of debts and the expenses of administration, would be subject to distribution by the executors under the terms of the will. Just what property would be so distributed or whether or not there would be any property to distribute could not be determined before the debts and expenses were paid.
The respondent urges that administration ended when the executors filed an inventory and appraisal of the estate on February 22, 1912, and that distribution was then made to trustees for the beneficiaries. Under the laws of Texas (art. 3436, Vernon’s Ann. Texas Stats.) where, as here, a testator has provided in his will that no other action may be had in the county court than the probating and recording of his will and the filing of an inventory and appraisement and list of claims of his estate, the executors of the will are in legal phraseology termed independent executors, cf. Ellis v. Mabry, 60 S.W. 572. Such independent executors have much broader powers in the management and control of the estate than ordinary executors or administrators. And where power is given them by the will to control, sell, invest and reinvest the property coming into their hands such power may be exercised by them as independent executors and not as trustees. Cf. Beckham v. Beckham, 227 S.W. 940; Yeager v. Bradley, 246 S.W. 688. This management of the estate by the *477 independent executors is an administration under the law. They may manage the estate and pay the debts as though they were their own. Cf. Ewing v. Schultz, 220 S.W. 625; Fernandez v. Holland-Texas Hypoteck Bank of Amsterdam, Holland, 221 S.W. 1004; Todd v. Willis, 66 T. 704; 1 S.W. 803.
It appears that at the time of decedent’s death he was deeply in debt and practically all of his property was mortgaged or hypothe-cated. Shortly thereafter the telephone stock began paying dividends. The executors managed the estate so as to provide a living for the widow and children and to pay off the debts which were largely liquidated by 1917, but not finally paid before ten years later. The real estate was not finally disposed of until 1922 and distribution was not made until the oldest child became of age in 1928. Moreover, the moneys belonging to the estate were deposited in the bank to the credit of the “ executors ” and disbursements made upon checks signed by the “ executors ” and upon the death of one of the executors the probate court appointed a successor to him in 1925. Under such circumstances we think that the independent executors continued to administer the estate until it was distributed in 1928. But even if respondent’s theory were correct and the independent executors became testamentary trustees at some point in their administration prior to the distribution in 1928, that fact would not be controlling.
In Ralph W. Harbison, 26 B.T.A. 896, the Board considered a question substantially the same as that here raised by respondent— whether distribution to the trustee (when there is a substantial equitable interest in the beneficiary) is distribution to the beneficiary— and held that distribution to the beneficiary does not occur until the termination of the trust. The Commissioner acquiesced in this decision. See G.C.M. 11309, XII-12-6080, p. 5 (modifying G.C.M. 6195, cited by respondent in his brief), holding that the value at the date of distribution to the taxpayer is the basis for determining gain upon the sale of personal property received from a testamentary trust.
The property here in question is personal property, acquired by will but not by specific bequest, and the case falls within section 113 (a) (5), Revenue Act of 1928, which provides that “the basis shall be the fair market value of the property at the time of the distribution to the taxpayer.” Cf. Finance Committee Report No. 960, p. 28, 70th Cong., 1st Sess. Since there was no increase in value of the stock between the date of distribution to petitioners and the date of its sale by them, no profit arose therefrom.

Judgment will be entered for the petitioners.